889 So.2d 840 (2004)
William GUESS, Appellant,
v.
CITY OF MIRAMAR, Appellee.
No. 4D03-2925.
District Court of Appeal of Florida, Fourth District.
November 17, 2004.
Rehearing Denied January 13, 2005.
*843 William R. Amlong, Karen Coolman Amlong and Jennifer Daley of Amlong & Amlong, P.A., Fort Lauderdale, for appellant.
Matthew H. Mandel and Jamie Alan Cole of Weiss, Serota, Helfman, Pastoriza, Guedes, Cole & Boniske, P.A., Fort Lauderdale, for appellee.
BERNSTEIN, SCOTT M., Associate Judge.
Plaintiff appeals a final judgment entered against him. He argues the trial court erred in the verdict form submitted to the jury on his Whistle-blower's Act claim. He also argues the trial court erred in entering a directed verdict on his Florida Civil Rights Act claim and erred again by entering a final judgment despite Plaintiff's announcement of a voluntary dismissal of the cause of action after entry of the directed verdict. We affirm the final judgment on the Whistle-blower's Act claim, affirm the directed verdict, but reverse the final judgment on the Florida Civil Rights Act claim.
William Guess, the former assistant police chief for the City of Miramar, filed a Whistle-blower's Act claim against the City pursuant to section 112.3187, Florida Statutes. The Whistle-blower's Act prevents government agencies from taking retaliatory action against employees who report to authorities certain violations of law by a public employer or independent contractor. Guess alleged he was illegally demoted by the City in retaliation for disclosing improprieties by the City's independent contractor towing company.
While that litigation was still pending, the City fired Guess. Guess then filed an amended complaint, adding a claim for wrongful termination under the Florida Civil Rights Act (FCRA), § 760.01, et seq., Florida Statutes (2003). The Florida Civil *844 Rights Act prohibits certain forms of discrimination and employment practices. Guess did not claim he was fired in retaliation for suing his employer or because of any circumstances giving rise to the Whistle-blower's Act claim. Rather, he based his FCRA claim on an entirely separate set of allegations, which occurred at a different time, and stem from Guess's involvement in processing another police officer's claim of sexual harassment.
At trial, after Guess rested his case, the City moved for a directed verdict on both claims. The trial court directed a verdict in favor of the City only on the FCRA claim. The Whistle-blower's Act claim then went to the jury, which found for the City.

The Whistle-Blower's Act Claim
One of Guess's responsibilities as assistant police chief was to oversee the City's towing services, which were provided by an independent contractor. Shortly before the towing contract was about to expire, the City sought bids for continued services.[1] Guess prepared a memorandum to the Chief of Police outlining alleged improprieties by the existing independent contractor. The City Manager then rejected all outstanding bids and extended the existing contract.
A few months later, the City decided to eliminate one of two assistant chiefs each for the fire and police departments in their 1999 fiscal year budget. Then Chief Atkinson testified that Guess had less seniority than the other assistant chief, so Guess was reassigned to the highest available position (captain) and retained most of his duties. However, Guess believed his demotion was due, not to administrative downsizing, but because he brought to light questionable business practices by a politically popular independent contractor.
At Guess's request, the trial court gave the following jury instruction:
You are instructed that the Whistle-blower's Act prohibits any retaliatory action being taken against a public employee by a public employer because the employee has disclosed to appropriate officials any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor, which creates and presents a substantial and specific danger to the public's health, safety, or welfare, or any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.
The verdict form (which Guess also requested) asked whether Guess disclosed:
1. any violation or suspected violation of any federal, state, or local law, rule, or regulation by an employee or agent of the City of Miramar or independent contractor to the City of Miramar that created and presented a substantial and specific danger to the public's health, safety, or welfare?
2. any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, or gross neglect of duty committed by an employee or agent of the City of Miramar or independent contractor to the City of Miramar?
Guess argues that the trial court erred in allowing the jury to decide questions of law. Guess contends the judge, not the jury, should have determined whether the *845 independent contractor's conduct threatened the "public health, safety and welfare," or constituted "gross mismanagement, malfeasance, misfeasance, gross waste of public funds, or gross neglect of duty." Essentially, Guess challenges the questions posed to the jury on the verdict form, an area in which the trial court has broad discretion. Walsh v. Diaz, 409 So.2d 1186 (Fla. 4th DCA 1982).
Here, there is no abuse of discretion where the verdict form paralleled the court's instruction on the law  an instruction the trial court gave at Guess's request. See Warth v. State Farm Fire and Cas. Co., 695 So.2d 906, 908 (Fla. 2d DCA 1997) (while the content of a verdict form is within the trial court's discretion, the verdict form should parallel the court's instruction on the law); Bohannon v. Thomas, 592 So.2d 1246, 1248 (Fla. 4th DCA 1992) (jury instructions which track statutory language are not erroneous).
In addition, this court has held that deciding whether a plaintiff has met the disclosure requirements under the Whistle-blower's Act "presents mixed questions of law and fact." Rice-Lamar v. City of Fort Lauderdale, 853 So.2d 1125, 1133 (Fla. 4th DCA 2003), review denied, 868 So.2d 522 (Fla.2004). As such, it appears the trial court properly submitted the issue to the jury. See, e.g., Sumpolec v. Pruco Life Ins. Co., 563 So.2d 778, 779 (Fla. 3d DCA 1990) (mixed questions of law and fact should be submitted to jury). We therefore affirm the final judgment entered by the trial court in favor of the City as to the Whistle-blower's Act claim in all respects.

The Florida Civil Rights Act Claim
Another one of Guess's responsibilities as assistant police chief was to oversee the professional standards unit, the division responsible for investigating claims of sexual harassment. On August 31, 1999, Officer Misa Inks approached her police captain to discuss the way Inks was being treated by a supervisor. The captain brought this to Guess's attention and, later that day, Guess and the captain met with Officer Inks. Guess essentially told Inks the procedures to follow in making a claim and gave Inks the telephone number of the Equal Employment Opportunity Commission. Guess then met with the Chief of Police to warn of an imminent complaint about a police supervisor addressing harassment and a hostile work environment.
Guess documented this conversation in a September 8, 1999 memorandum, which also confirmed that Guess had advised the officer of the "proper policies and procedures to follow when making complaints of this nature." Neither the conversation between Guess and the Chief, nor the memorandum, which the Chief described as "plain vanilla," mentioned specific acts of harassment, dates or times of incidents, or the names of alleged perpetrators or witnesses.
Guess never took any further action regarding Officer Misa Inks or her claim of harassment. The Chief of Police scheduled a meeting with Officer Inks, but Inks failed to attend. The Police Department did not begin any investigation because they did not know what to investigate. On October 26, 1999, the Chief received a demand letter from an attorney representing Inks. Guess was fired November 12, 1999. Inks subsequently filed her claim against the City alleging discrimination on April 13, 2000.
The Police Chief testified that Guess was fired because he was disloyal. Guess admitted that a recent evaluation criticized his interpersonal skills and stated he needed to build better relationships with peers and subordinates. His lowest scores were for attitude and loyalty. The Police Chief also testified that Guess's termination had *846 nothing to do with Officer Inks's claim of harassment.
The trial court granted a directed verdict in favor of the City on Guess's FCRA wrongful termination claim. Guess now claims this was error. We disagree.
When reviewing the grant of a directed verdict, we must view the evidence and all inferences of fact in the light most favorable to the nonmoving party and we may affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party. Decarlo v. Griffin, 827 So.2d 348 (Fla. 4th DCA 2002). Thus, if any reasonable interpretation of the evidence supports the plaintiff's claim, the court must deny the motion. Owens v. Dep't of Highway Safety and Motor Vehicles, 572 So.2d 953, 955 (Fla. 5th DCA 1990). Here, no reasonable interpretation of the evidence supports Guess's claim.
The anti-retaliatory provisions of the FCRA, section 760.10, Florida Statutes (1999),[2] provide:
It is an unlawful employment practice for an employer ... to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.
See also 42 U.S.C. § 2000e-3(a). Courts have commonly referred to these provisions as the participation and opposition clauses. E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171 (11th Cir.2000).
To establish a prima facie claim for retaliation under Title VII, a plaintiff must demonstrate: 1) he engaged in statutorily protected activity; 2) he suffered an adverse employment action; and 3) there is a causal relation between the two events. Harper, 139 F.3d at 1385. As this court recently noted in Rice-Lamar, 853 So.2d at 1125:
the causal link requirement under Title VII must be construed broadly; "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Once the prima facie case is established, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action. The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct.
853 So.2d at 1132-33 (citing Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir.1998)).
The "participation clause" protects an employee from retaliation if that employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII or the FCRA. Total Sys. Servs., Inc., 221 F.3d at 1174. Guess asserts he participated in Inks's claim by giving her the EEOC's phone number and writing the September 8, 1999 memorandum. However, the participation clause only protects activities that occur "in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house *847 investigation, conducted apart from a formal charge with the EEOC.... [A]t a minimum, some employee must file a charge with the EEOC (or its designated representative) or otherwise instigate proceedings under the statute for the conduct to come under the participation clause." Id.
In Total System Services, the plaintiff participated in an internal investigation of a supervisor's alleged sexual harassment of other employees. The employer's reason for terminating the plaintiff was that she lied during the investigation; however, the plaintiff claimed she was fired in retaliation for her participation in the employer's internal investigation. The court held that the plaintiff's actions did not constitute protected activity under the participation clause because no EEOC complaint had been filed before the plaintiff's termination. Id. at 1174. Therefore, Guess, whose actions and termination similarly predated the filing of a formal charge with the EEOC, cannot avail himself of the participation clause.
The "opposition clause" also fails to provide Guess any avenue for relief. Guess claims his September 8, 1999 memorandum and meeting with the Police Chief were protected activity under the opposition clause of the FCRA. An employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII or the FCRA]." Total Sys. Servs., Inc., 221 F.3d at 1174. However, an employee's statement or communication cannot be deemed to be in opposition to an unlawful employment practice unless it refers to a specific practice of the employer that is allegedly unlawful. "Vagueness as to the nature of the grievance ... prevents a protest from qualifying as a protected activity." Dupont-Lauren v. Schneider (USA), Inc., 994 F.Supp. 802, 823 (S.D.Tex.1998). In Dupont-Lauren, the plaintiff did not complain of any specific activity, nor did she accuse any specific person of discrimination against her. Thus, her comments were too vague to constitute protected activity under the opposition clause.
Guess's actions were similarly vague. His September 8, 1999 memorandum did not apprise the Police Chief of any activity which Guess viewed as discriminatory or unlawful. The memorandum appears to be purely documentary, stating that Guess met with Inks, that a complaint was "imminent," and that Inks was advised of procedures to follow. In fact, the reason given by Guess for drafting the memorandum was that he was going on vacation and wanted to "cover" himself by having a record of his dealings with Inks. Guess's memorandum did not state whether Inks's claims were of a sexual nature, did not give the name of the alleged harasser, and did not describe the specific incidents of harassment. Guess's actions simply cannot be deemed protected activity.
Moreover, even if Guess's memorandum had not been vague, Guess appears to have done little more than pass along information and hand out a phone number. (There was no testimony Inks ever used the phone number.). This is not enough to say Guess "opposed" any conduct by the police department. See Sawicki v. Amer. Plastic Toys, Inc., 180 F. Supp 2d 910, 918-19 (E.D.Mich.2001) (plaintiff's delivery of subordinates' sexual harassment complaint was not protected under the opposition clause because it was not clear to the employer that plaintiff was opposing the conduct claimed by subordinates; rather, it was plaintiff's duty as supervisor to investigate or send the complaint up the line of authority).
Even if Guess had established a prima facie case for retaliation under the FCRA *848 (which it appears he did not), we must next consider whether the City proffered a legitimate, non-retaliatory reason for the adverse employment action against Guess. See Rice-Lamar, 853 So.2d at 1132-33. Here, the testimony of the Police Chief appears to demonstrate several such reasons for Guess's termination. Furthermore, Guess admitted his recent evaluation criticized certain interpersonal skills. See Dupont-Lauren, 994 F.Supp. at 825 (one of the legitimate, nondiscriminatory business reasons for termination was that plaintiff lacked interpersonal skills even though she had a favorable review as to job performance).
The burden would then have shifted back to Guess to prove, by a preponderance of the evidence, that such reasons were pretextual. See Rice-Lamar, 853 So.2d at 1132-33. To demonstrate a pretext for retaliation, a plaintiff must show both that the employer's stated reasons for its actions are false and that prohibited retaliation was the real reason for the employer's decision. Dupont-Lauren, 994 F.Supp. at 825.
In this case, Guess did not demonstrate that the stated reasons for firing him were false. In fact, Guess rested his case immediately after the Police Chief's testimony. See Sawicki, 180 F.Supp.2d at 921 ("By not effectively refuting the defendant's assertions of these legitimate nondiscriminatory business reasons for terminating the plaintiff, the plaintiff has failed to establish that the defendant's reasons were pretextual."). Therefore, Guess did not establish by a preponderance of the evidence that the City's reasons for terminating him were pretextual. The trial court was thus correct to direct a verdict against Guess on the FCRA claim.
After the court directed the verdict, but before final judgment was entered, Guess announced a voluntary dismissal of the FCRA claim. The court disregarded the voluntary dismissal and entered final judgment anyway. This last step was error.
In Fears v. Lunsford, 314 So.2d 578, 579 (Fla.1975), the Supreme Court held that a plaintiff's right to take a voluntary dismissal is "absolute."[3] However, our analysis cannot stop there. Typically, only an entire action may be dismissed voluntarily under Fla. R. Civ. P. 1.420(a)(1). Deseret Ranches of Fla., Inc. v. Bowman, 340 So.2d 1232, 1233 (Fla. 4th DCA 1976). In Deseret Ranches, this court held that the proper method of deleting less than all counts from a pleading is an amendment of the pleading pursuant to Florida Rule of Civil Procedure 1.190. The Plaintiff had filed a two count complaint (based on the same set of facts) alleging a prescriptive easement (count I) and a statutory way of necessity (count II). We held that an attempt to dismiss voluntarily only count II was a nullity. The situation in Deseret Ranches, however, is completely distinguishable from Guesss position in this case.
Guess's Whistle-blower's Act lawsuit (alleging he was wrongfully demoted for commenting on the City's towing contract) was already pending at the time Guess was fired. Guess then used Rule 1.190, Fla. R. Civ. P. to amend his pleadings to add a second cause of action. His second count claimed he was fired in violation of the *849 FCRA because of his involvement in Misa Inks's sexual harassment allegations. This was completely unrelated to the towing contract dispute already pending in Guess's first count.
Guess had two distinct causes of actions against the City of Miramar which arose from totally different sets of facts. Moreover, many of the facts upon which the FCRA claim was based had not even occurred at the time Guess filed his original Whistle-blower's Act lawsuit against the City. Guess could have filed a second, separate lawsuit against the City to bring the FCRA action. Instead, he utilized the provisions of Rule 1.190, Fla. R. Civ. P., to amend his pleadings to join the unrelated claims. He should not be penalized because he acted in the interest of judicial economy. Guess should not be forced to waive his absolute right to a voluntary dismissal merely because his two causes of action were pending under one case number, rather than two. Thus, Guess maintained the absolute right to dismiss the FCRA cause of action voluntarily and the trial court erred when it ignored that right.
The City complains that Guess's voluntary dismissal of the FCRA claim is an attempt to prevent this court's review of the directed verdict. We disagree. We make no comment on either the res judicata or collateral estoppel effect of our decision, because we were not asked to do so. Nevertheless, while directing a verdict against Guess on the FCRA claim was proper, entering final judgment against him was not. We find all other issues raised by Guess unpersuasive.
Therefore, the final judgment is affirmed as to the Whistle-blower's Act claim and reversed as to the FCRA cause of action. This cause is remanded to the trial court with instructions to enter final judgment against Guess only on the Whistle-blower's Act claim.
POLEN and MAY, JJ., concur.
NOTES
[1] Apparently, the City was not required to obtain bids for this contract. The City also had the option to extend the existing independent contractor's agreement.
[2] Section 760.10(7), Florida Statutes, is virtually identical to its Federal Title VII counterpart, 42 U.S.C. § 2000e-3(a). The FCRA is patterned after Title VII; federal case law on Title VII applies to FCRA claims. Castleberry v. Chadbourne, Inc., 810 So.2d 1028, 1030 (Fla. 1st DCA 2002). See also Harper v. Blockbuster Entm't Corp., 139 F.3d 1385 (11th Cir.1998).
[3] The concurring opinion specifically recognized a need to change the language of the Rule 1.420(a)(1). We agree that the rule should be changed, specifically to avoid the result occurring here. However, we also acknowledge that the rule was in fact amended three times since the Fears opinion was published, yet this particular provision has never been altered.