[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10579
Non-Argument Calendar

_____

D.C. Docket No. 4:15-cv-00064-RH-CAS

SANDRA F. ADDISON,

Plaintiff - Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 27, 2017)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Sandra F. Addison appeals the district court's order granting summary

judgment in favor of the Florida Department of Corrections. Ms. Addison argues

that the district court erred in rejecting her race and age discrimination claims, as

well as her retaliation claim.  The Department, in response, contends that Ms. Addison failed to present sufficient evidence that she suffered an adverse employment action because of her race or age, or because she had engaged in protected activity.  After reviewing the record and the parties' briefs, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying facts of the case and recite only what is necessary to resolve this appeal.

The Department operates the Gulf Correctional Institution, which has three facilities: Gulf Main, Gulf Annex, and Gulf Forestry Camp.  Ms. Addison, an African-American woman over the age of 50, began working for the Department in 1990, eventually becoming captain at Gulf Annex.

In October of 2012, however, the Department transferred Ms. Addison and 25 other officers (some of whom were also African-American) to Gulf Main as part of a broad reorganization.  The transfer did not affect Ms. Addison's title, duties, pay, or hours, but she preferred being at Gulf Annex.

At Gulf Main, Ms. Addison took over a shift that had previously belonged to a white captain.  Her new subordinates apparently did not like this, allegedly refusing her orders on several occasions and falsely accusing her of using derogatory language.  Ms. Addison filed multiple incident reports regarding

2

insubordination and inmate abuse, but the Department did not correct the problems.

On February 10, 2014, during the morning meal, an inmate threw a food tray at correctional officer April Faircloth.  Herman Sapp, the on-duty sergeant, questioned Ms. Faircloth.  Ms. Faircloth told Mr. Sapp that an inmate threw a food tray at her, but missed.  Ms. Faircloth also spoke with Ms. Addison, and told her the same thing.  Ms. Addison asked Ms. Faircloth if she needed medical attention, but she said no.  Ms. Addison then instructed Ms. Faircloth to complete an incident report, which she did, but Ms. Addison left her shift before reviewing it.  In the incident report, Ms. Faircloth deviated from what she had told Ms. Addison and Mr. Sapp and stated that she had been hit with the food tray and food.

The following day, Colonel Crayton Shaw reviewed Ms. Faircloth's incident report and interviewed her.  Mr. Shaw learned that Ms. Faircloth had reported the incident to Ms. Addison and realized that Ms. Addison had not filed her own staff battery report.  So Mr. Shaw completed the paperwork for a staff battery, notified the inspector general's office, briefed Warden James Blackwood, and transferred the inmate to Gulf Annex.  He also instructed Ms. Faircloth to undergo a medical evaluation, which she did.  The evaluation did not reveal any injuries.

Upon learning of the incident and Ms. Addison's alleged failure to report a staff battery, Mr. Blackwood instructed the assistant warden, James Peters, to

3

review the relevant incident reports and determine what happened. Mr. Peters detailed his findings in a memorandum to Mr. Blackwood on February 14, 2014. After reviewing the memorandum, Mr. Blackwood concluded that Ms. Addison had violated Department policy by failing to report a staff battery, and recommended that Ms. Addison be terminated.

On February 18, 2014, Ms. Addison received a pre-discipline letter notifying her of the Department's intention to take disciplinary action that could result in termination. Ms. Addison subsequently attended a pre-determination conference, where she was able to present her side of the story. Ms. Addison testified on her own behalf and called Mr. Sapp as her witness. They both maintained that Ms. Faircloth had said that she had not been hit by the tray. But Ms. Addison admitted knowing that Ms. Faircloth had been hit with food and had broken the seal on her chemical spray. Still, she explained that she did not believe those circumstances triggered the staff-battery reporting requirements.

About a month later, Mr. Blackwood offered Ms. Addison a demotion in lieu of termination, on the condition that she release all claims against the Department. He offered her a pre-disciplinary settlement agreement to that effect, which Ms. Addison signed. She was demoted to sergeant, a position she still holds. Prior to her demotion, Ms. Addison had never received any formal disciplinary action. Kenneth Stephens, who is younger and white, replaced Ms. Addison as captain.

4

## II

We review a district court's grant of summary judgment *de novo*. *See Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). In doing so, we draw all inferences and review all of the evidence in the light most favorable to the non-moving party. *See id.* The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of any material fact and that it is entitled to judgment as a matter of law. *See id.*

## III

Ms. Addison filed this lawsuit against the Department, alleging that her transfer to Gulf Main and her demotion to sergeant were motived by race and age discrimination. She also alleged that they were in retaliation for her complaints about discrimination and other subordinate and inmate misconduct. Ms. Addison asserted claims under Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and the Florida Whistle-blower's Act.

Federal and Florida antidiscrimination laws prohibit discrimination on the basis of race and age. *See* 42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1)(a). Claims brought under the FCRA are analyzed under the same standards as Title VII because the FCRA is modeled on Title VII. *See, e.g.*, *Jones v. United Space Alliances, L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007) ("Florida courts apply Title VII caselaw when they interpret the FCRA").

5

Where, as here, there is no direct evidence of discrimination, a plaintiff must demonstrate discrimination circumstantially, usually by relying on the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To establish a *prima facie* case of race or age discrimination a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected class more favorably or, for a termination, was replaced by a person outside the protected class.  *See, e.g.*, *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

A plaintiff who establishes a *prima facie* case of discrimination creates "a presumption that the employer unlawfully discriminated against [him or her]." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  To rebut this presumption, the employer must articulate a legitimate, nondiscriminatory reason for its decision.  *See McDonnell Douglas*, 411 U.S. at 802–03.  Once the employer proffers a nondiscriminatory reason, the presumption disappears and the plaintiff retains the ultimate burden of persuasion to demonstrate that the employer intentionally discriminated on the basis of a protected classification.  *See id.*

Ms. Addison is a member of two protected classes based on her age (which is above 40) and race (black).  And there is no dispute that she was qualified to hold her previous position as captain.  Ms. Addison relies on two incidents as her

6

adverse employment actions: the transfer to Gulf Main and her demotion from captain to sergeant.

An employee suffers an adverse employment action when there is "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). A lateral transfer, without more, does not amount to an adverse employment action. *See, e.g.*, *Hinson v. Clinch County Ga. Board of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000) ("[A] transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility."). Ms. Addison has not shown that her transfer to Gulf Main amounted to an adverse employment action because there is no evidence that her title, duties, pay, or hours changed in any material way (if at all). Ms. Addison therefore cannot rely on her transfer to Gulf Main to establish a *prima facie* case of discrimination.

Ms. Addison did, however, provide sufficient evidence showing a *prima facie* case of race and age discrimination as to her demotion to sergeant. Ms. Addison's demotion from captain to sergeant constitutes an adverse employment action because she received a reduction in prestige and responsibility. *See id.* And she was replaced with an individual outside of her protected classes, a younger, white male.

Because Ms. Addison established a *prima facie* case that her demotion was discriminatory, the burden shifted to the Department to articulate a legitimate, nondiscriminatory basis for the demotion. The Department met its burden and proffered a nondiscriminatory reason. Specifically, according to the Department, Ms. Addison was demoted for failing to properly report the battery on her subordinate, Ms. Faircloth, as required by the Department's policies.

After the Department came forth with a nondiscriminatory reason, Ms. Addison was left to show that the proffered reason was pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. To do so, and create an issue of fact, she had to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). Ms. Addison provided two theories in support of her argument that the purported failure to report a staff battery was pretext.

Ms. Addison first pointed to discussions her subordinates had been having about the possibility that she would be replaced by Mr. Stephens. Specifically, one subordinate testified that there was "gossip" and another said there were "rumors" along these lines. Because this gossip apparently predated the battery on Ms. Faircloth, Ms. Addison contends that it establishes that the failure to report the

8

staff battery was pretextual, because management intended to replace Ms. Addison all along.

There are two major problems with this argument. First, what a few subordinates heard from a group of other unidentified subordinates—even if somehow admissible—says nothing about what the warden, the ultimate decisionmaker, actually intended to do. Second, we know nothing about the context of these rumors. Vague gossip such as this is hardly evidence that, even if Ms. Addison was on the cusp of demotion before the incident involving Ms. Faircloth, the intent to demote her was based on discriminatory animus.

Ms. Addison also alleged that two employees outside her protected class— Ms. Faircloth (a younger person) and Mr. Sapp (a white person)—were not disciplined for equally serious policy violations. In this Circuit, alleged comparators "must be similarly situated 'in all relevant respects.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). Otherwise, the alleged preferential treatment towards non-identical comparators does not indicate pretext. *See id.*

Ms. Faircloth and Mr. Sapp are not proper comparators. Ms. Faircloth was Ms. Addison's subordinate. Although Ms. Faircloth's false statements in her own report are deserving of discipline, it is of a different nature from Ms. Addison's failure to report a battery on a subordinate. Mr. Sapp is also not a valid comparator

9

because he did not hold the same supervisory role as Ms. Addison. Ms. Addison, not Mr. Sapp, was the officer in charge of the situation. She failed to meet the higher standards required of her rank. And her demotion ultimately reflected her failure to carry out her supervisory duties.

Accordingly, Ms. Addison failed to provide sufficient evidence to create a jury question as to whether the Department's articulated legitimate, nondiscriminatory reason was pretextual. The district court properly granted summary judgment on Ms. Addison's discrimination claims.

### IV

The Florida Public Whistle-blower's Act prohibits state and local agencies from retaliating against an employee for disclosing a violation or suspected violation of law or regulation by another employee, agent, or independent contractor, which produces a substantial and specific danger to the public's health, safety, or welfare. *See* Fla. Stat. § 112.318(5)(a). It also prohibits retaliating against an employee for disclosing an act or suspected act of another employee, agent, or independent contractor of gross neglect of duty committed. *See id.*

To establish a *prima facie* case of retaliation under the Act, a plaintiff must show that (1) she engaged in a protected activity (2) and suffered an adverse employment action (3) that was causally related to the protected activity. *See Rice-Lamar v. City of Fort Lauderdale.*, 852 So. 2d 1125, 1131–33 (Fla. 4th DCA 2003)

10

(establishing a *prima facie* case of retaliation under Florida's Public Whistle-blower Act is the same as under Title VII). As in the discrimination context, employer then has the burden to proffer a legitimate, non-retaliatory reason for the adverse employment action. *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 950 (11th Cir. 2000). If the employer articulates a legitimate reason, the burden shifts back to the employee to demonstrate that the proffered reason "is merely pretext for prohibited, retaliatory conduct." *Id.*

Assuming Ms. Addison has established a *prima facie* case, her retaliation claims fails for similar reasons as her discrimination claims. The Department maintains that Ms. Addison was demoted for not filing a staff battery incident report, and Ms. Addison has not presented evidence allowing a reasonable jury to find that the Department's reason was pretextual. The district court therefore properly granted summary judgment on Ms. Addison's retaliation claims.

## V

The district court did not err in granting summary judgment.

**AFFIRMED.**

11