[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13202

Non-Argument Calendar

_____

SARA DANESHPAJOUH,

Plaintiff-Appellant,

*versus*

SAGE DENTAL GROUP OF FLORIDA, PLLC,
a Florida corporation,
SAGE DENTAL MANAGEMENT, LLC,
a Florida corporation,
SAGE DENTAL OF POMPANO BEACH, P.A.,
a Florida corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-62700-RAR

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Sara Daneshpajouh sued her former employer, Sage Dental Group of Florida, PLLC,[1] alleging that she was terminated due to her pregnancy and in retaliation for protected activity under Florida and federal law. The district court granted summary judgment in Sage Dental's favor, and we affirm.

## FACTUAL BACKGROUND

Daneshpajouh started working for Sage Dental—then Gentle Dental of Pompano Beach, P.A.—in 2012. She was Sage Dental's main dentist in its Pompano Beach office, where she worked under the supervision of Dr. Antonio Cruz and, later, under Dr. Miguel Montilla. Dr. Cruz had several conversations with Daneshpajouh about complaints he had received from other employees about her behavior in the workplace, as well as reports of

_____

[1] Daneshpajouh also sued several other related entities: Sage Dental Management, LLC, and Sage Dental of Pompano Beach, P.A. We refer to these entities collectively as Sage Dental, as do the parties.

dissatisfied patients who felt that Daneshpajouh aggressively proposed expensive treatment plans after speaking with them for only a few minutes. Out of eleven other dentists who worked at Sage Dental in a similar timeframe, Daneshpajouh had the lowest rates of patient retention and treatment acceptance. In his deposition, Dr. Cruz described Daneshpajouh as "abrasive" with staff and patients and said that she "wasn't a team player." Dr. Montilla had a similarly difficult time with Daneshpajouh. He began to advocate terminating her in the summer of 2017.

Aside from these interpersonal issues, Daneshpajouh's Pompano Beach office had financial troubles when she was the lead dentist there—a twenty-five percent revenue loss from 2016 to 2017. Drs. Cruz and Montilla believed that Daneshpajouh was responsible for these revenue losses.

In July 2017, Daneshpajouh learned that she was pregnant. Before Daneshpajouh had announced her pregnancy, Sage Dental hired a new office manager in the Pompano Beach office. Daneshpajouh did not get along with the new office manager, and she at least once complained to Dr. Montilla that the office manager was violating federal medical privacy laws by inadequately protecting patients' medical information.

By October 3, 2017, management at Sage Dental was looking to replace Daneshpajouh. Two days later, Sage Dental had already hired Daneshpajouh's replacement, and Dr. Montilla planned to meet with Daneshpajouh on October 18 to inform her

she would be terminated.  But before he had the chance to do so, Daneshpajouh told him that she was pregnant.

When Dr. Montilla learned about Daneshpajouh's pregnancy, he decided not to tell her she was being fired.  Instead, he recommended to Sage Dental's CEO and the other management that Daneshpajouh be transferred from the Pompano Beach office to the Parkland office.  Dr. Montilla later explained in an email to other Sage Dental management that he would follow through with Daneshpajouh's termination after she had given birth.

Daneshpajouh had to take leave due to a complication with her pregnancy between October 27 and November 3; Sage Dental told her this leave would count against her accrued vacation time. When Daneshpajouh returned on November 6,  Dr. Montilla told her he was transferring her to the Parkland office, which she considered a demotion and agreed to only if she received a salary guarantee.  The next day, Sage Dental's Regional Vice President of Operations emailed Dr. Montilla and notified him that the Pompano Beach office's projected appointment revenue for that coming Friday had declined from $11,000 to around $6,000.  Dr. Montilla felt that Daneshpajouh's behavior was responsible for the cancelled appointments.

Sage Dental terminated Daneshpajouh two days later on November 9.  Dr. Montilla told her that she was being terminated because she was unprofitable.

## PROCEDURAL HISTORY

Daneshpajouh sued Sage Dental in October 2019. Her amended complaint alleged five counts: pregnancy-based sex discrimination in violation of Title VII and the Florida Civil Rights Act (count one); retaliation, in violation of the same two statutes, based on Sage Dental's offer to transfer Daneshpajouh (count two); interference with Daneshpajouh's rights under the Family and Medical Leave Act, for counting her time off in October 2017 against her accrued vacation time (count three); retaliation under the Family and Medical Leave Act (count four); and retaliatory discharge under the Florida Whistleblower Act, for Daneshpajouh's complaints about the office manager's handling of client data (count five). After discovery had ended, Sage Dental moved for summary judgment on all claims. The district court granted Sage Dental's motion in its entirety.

As to count one, the district court found Daneshpajouh had not shown direct evidence of pregnancy discrimination. The district court also concluded that Daneshpajouh failed to show circumstantial evidence of pregnancy discrimination, as her supervisors had consistently testified that Daneshpajouh's manners and performance issues motivated their decision. As to count two, the district court concluded that Daneshpajouh had not shown evidence of retaliation under Title VII or the Florida Civil Rights Act because Sage Dental had contemplated firing Daneshpajouh earlier in October 2018—before its staff knew about Daneshpajouh's pregnancy and before she objected to being transferred.

As to count three, the district court held that Daneshpajouh could not show interference with her rights under the Family and Medical Leave Act because the Act permitted Sage Dental to count her accrued vacation time toward her medical leave. And as to counts four and five, the district court concluded that Daneshpajouh's retaliation claims under the Florida Civil Rights Act and the Florida Whistleblower Act failed for the same reasons her Title VII retaliation claim failed: Daneshpajouh didn't show that her protected activity was causally related to her termination. The district court therefore entered final summary judgment on all claims in Sage Dental's favor. Daneshpajouh timely appealed.

## STANDARD OF REVEIW

"We review a district court's grant of summary judgment de novo, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). A fact is material if it "might affect the outcome of the suit under governing law," and a dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Daneshpajouh appeals the district court's summary judgment on her: (1) discrimination claims under Title VII and the Florida Civil Rights Act; and (2) retaliation claims under Title VII, the Florida Civil Rights Act, the Family and Medical Leave Act, and the Florida Whistleblower Act.[2]  We address each category of claims in turn.

### Discrimination Claims

Title VII prohibits an employer from discriminating against an employee on the basis of sex, including on the basis of pregnancy.  42 U.S.C. §§ 2000e-2(a)(1), 2000e(k).  Daneshpajouh's discrimination claim under the Florida Civil Rights Act is governed by the same standards as her Title VII claim.  *See Holland v. Gee*, 677 F.3d 1047, 1054 n.1 (11th Cir. 2012).

Daneshpajouh argues that she showed "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (citation and quotation marks omitted). To show a convincing mosaic, a plaintiff must point to "evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2)

---

[2]  Daneshpajouh does not appeal the district court's order as to her Family and Medical Leave Act interference claim.  So we don't discuss it any further.

systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (11th Cir. 2011)).

On appeal, Daneshpajouh points to four bits and pieces of evidence she says add up to a convincing mosaic: (1) she was fired within a month of telling her bosses that she was pregnant; (2) non-pregnant employees were treated better than she was; (3) any performance issues happened years earlier; and (4) the company decided to transfer her to the Parkland office. But none of this evidence, alone or together, would allow a jury to infer intentional discrimination.

First, as to the timing of her termination, the undisputed summary judgment evidence showed that the decision to fire Daneshpajouh was made before she told her supervisors that she was pregnant. Sage Dental could not have intentionally discriminated against Daneshpajouh if it didn't know she was pregnant when it made the decision to take an adverse employment action against her. *See Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1306 (11th Cir. 2002) (no intentional discrimination where "all of the evidence indicated Bardakjy, the individual who made the decision to rescind Appellant's conditional job offer, was unaware of Appellant's religion"); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("A decision maker cannot have been motivated to retaliate by something unknown to him.").

Second, as to Sage Dental's treatment of other employees, Daneshpajouh hasn't pointed to another employee that was similarly situated to her. To create an inference of intentional discrimination, comparator evidence, even under a convincing mosaic theory, has to be "similarly situated." *See Lewis*, 934 F.3d at 1185 (quoting *Silverman*, 637 F.3d at 734).

Third, as to her job performance, the summary judgment evidence was undisputed that Daneshpajouh's supervisors viewed her as "abrasive" with staff and patients, and not "a team player." Of Sage Dental's eleven offices, hers was the worst for patient retention and treatment acceptance. Even if Daneshpajouh's supervisors were wrong about her performance, "[t]he question is whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). Here, the undisputed evidence was that that they were.

And fourth, whether Daneshpajouh was going to be transferred to the least profitable office or fired, the undisputed summary judgment evidence showed that Sage Dental decided to take an adverse employment action against her before she announced her pregnancy. Sage Dental could not have intentionally discriminated against Daneshpajouh if it decided on an adverse action before knowing about her pregnancy. *See Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006) ("When an employer contemplates a given action before the harassment takes place, temporal proximity between the action and

the incident of harassment alone will not suffice to show causation.").

### Retaliation Claims

Daneshpajouh alleges that she was retaliated against in violation of four different statutes. The elements for each claim are essentially identical. *See Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (Title VII); *Brungart v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000) (Family and Medical Leave Act); *Rice-Lamar v. City of Ft. Lauderdale*, 853 So. 2d 1125 (Fla. Dist. Ct. App. 2003) (applying elements from Title VII retaliation claim to Florida Whistleblower Act). To establish a prima facie case of retaliation, Daneshpajouh must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse action; and (3) the first two elements were causally connected. *Johnson*, 948 F.3d at 1325.

The third element is the only one at issue on appeal. Daneshpajouh argues that she established causation through temporal proximity between her statutorily protected activity and her termination. She complained about potential violations of patients' privacy on October 23, for example, and took medical leave on October 27, before she was fired a few weeks later on November 9.

But "in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity

and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).  Here, the undisputed summary judgment evidence showed that Sage Dental already planned to terminate Daneshpajouh before she engaged in any protected activity—before she complained about patient privacy, or her leave, or her transfer.  Thus, the district court did not err in granting summary judgment on the retaliation claims.

   **AFFIRMED.**