Bonnie SIERMINSKI, Plaintiff-Appellant,

v.

TRANSOUTH FINANCIAL CORPORATION, Defendant-Appellee.

No. 99-4371.

United States Court of Appeals,

Eleventh Circuit.

June 26, 2000.

Appeal from the United States District Court for the Southern District of Florida.(No. 96-07402-CV-NCR), Norman C. Roettger, Jr., Judge.

Before TJOFLAT, RONEY and FAY, Circuit Judges.

RONEY, Circuit Judge:

This retaliatory discharge case was originally filed in state court and removed to federal court.  The appeal raises the question, one of first impression in this Circuit, whether in determining the propriety of removal, the district court may consider evidence submitted after the removal petition is filed.  We hold that the Court may consider such evidence, but only to establish the facts present at the time of removal.  Plaintiff Bonnie Sierminski brought suit under Florida's Whistle Blower's Act after she was terminated from her employment with defendant Transouth Financial Corporation.  Transouth removed the case to federal court. Sierminski appeals the district court's (1) denial of her motion to remand and (2) the grant of summary judgment to her employer.  We affirm.

I.    *Removal Jurisdiction*

On December 5, 1996, Sierminski filed a complaint in circuit court in Broward County, Florida alleging that defendant violated Florida's Whistle Blower's Act, § 448.102, Florida Statutes, by terminating her employment.  In the body of the complaint, she alleged damages in excess of $15,000 of the jurisdictional minimum for a damage claim in state circuit court.  In the ad damnum clause she requested relief in the form of reinstatement, injunctive relief, compensatory damages and attorney's fees without specifying any monetary figure.  On December 10, defendant filed a notice of removal alleging diversity jurisdiction under

28 U.S.C. §§ 1332 & 1441. On December 13, Sierminski filed a motion for remand, arguing that defendant failed to prove the amount in controversy exceeds the minimum jurisdictional amount in federal court of $50,000.

After removal but before the district court ruled on the motion for remand, several events occurred. *First,* on December 20, defendant filed a response to plaintiff's motion in which defendant attached a declaration from the company's Director of Human Resources indicating plaintiff's salary and benefits information. The motion itself contained detailed calculations indicating that damages exceed the $50,000 jurisdictional amount. *Second,* defendant sent plaintiff requests to admit that her claim was not worth more than $50,000 or $75,000. Defendant requested two amounts because the statutory minimum was $50,000 at the time of the removal notice, and increased to $75,000 during the pendency of the proceedings. *Third,* in February 1997, defendant filed a motion to strike or deny Plaintiff's motion to remand as moot after plaintiff failed to respond to the requests.

Approximately two years after the removal notice was filed, in November 1988, the district court denied Sierminski's motion to remand in an Omnibus Order. The court recounted that defendant had provided it with calculations indicating the amount in controversy in fact exceeds $50,000. With regard to the request for admissions, the court determined that because plaintiff failed to respond to the requests within the time required by Federal Rule of Civil Procedure 36, the requests are deemed admitted. The question before us is whether the district court was limited to the evidence provided at the time of the petition for removal or whether it could properly rely on the information subsequently furnished to the court.

Removal is controlled by 28 U.S.C. § 1441, which provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States...." Such original jurisdiction exists, for example, if there is "diversity of citizenship," such as where the suit is between citizens of different states and the amount-in-controversy exceeds the statutorily prescribed amount. 28 U.S.C. §

**2**

1332.  Here, plaintiffs do not dispute diversity but question whether defendant has met its burden of proof with regard to the amount in controversy.

There is case law to guide us regarding defendant's burden of proof to support removal jurisdiction. See *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1094 (11th Cir.1994)(Where a plaintiff has specifically claimed less than the jurisdictional amount in state court, a defendant, to establish removal jurisdiction, must prove to a "legal certainty" that the plaintiff would not recover less than $50,000 if she prevailed); *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1356-57 (11th Cir.1996)(Where, as in this case, damages are unspecified, the preponderance of the evidence standard applies), *overruled on other grounds by Office Depot v. Cohen,* 204 F.3d 1069 (11th Cir.2000).  We have not addressed the question raised in this appeal, however, of what *types of proof* are appropriate for the district court to consider in determining whether defendant has satisfied that burden.

Plaintiff argues that defendant must submit evidence demonstrating the existence of federal jurisdiction at the time of the filing of the removal petition itself and cannot rely on post-petition evidence to support jurisdiction, citing precedent from this Circuit and cases from two other circuits.  *See Laughlin v. Kmart Corp.,* 50 F.3d 871 (10th Cir.1995);  and *Gaus v. Miles, Inc.* 980 F.2d 564, 567 (9th Cir.1992).

Plaintiff's first assertion that the motions filed after plaintiff's motion for remand are not reviewable at all under this Court's decisions in *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405 (11th Cir.1999) and *Coker v. Amoco Oil,* 709 F.2d 1433 (11th Cir.1983) is unavailing.  In *University of South Alabama,* the court held that the district court erred in deciding a complex question of personal jurisdiction prior to resolving the issue of subject matter jurisdiction.  In this case, the subsequent motions considered by the district court were directly related to the amount in controversy issue before it.  *Coker* is inapposite in that it addressed the type of evidence required to established *diversity* of the parties, not jurisdictional amount. The court held that with regard to whether the parties are diverse, removability should be determined "according to the plaintiff's pleading at the time of the petition for removal."  709 F.2d at 1440.

**3**

In *Laughlin v. Kmart Corp.,* 50 F.3d 871 (10th Cir.1995), the Tenth Circuit *sua sponte* remanded a case to state court for lack of subject matter jurisdiction where neither plaintiff's petition nor defendant's notice of removal established on their face the requisite jurisdictional amount. The court refused to consider facts in defendant's jurisdictional brief or an economic analysis of plaintiff's damages claims prepared after the motion for removal. This is the only case cited or found which employs such a restrictive approach.

Plaintiff's reliance on the Ninth Circuit decision in *Gaus* as being in accord is erroneous. The holding in *Gaus* was based on the fact that the defendant produced no evidence before or after the filing of the petition to remove. The language that the evidence was insufficient to "satisfy [defendant's] burden of setting forth, *in the petition itself,* the underlying facts supporting its assertion that the amount in controversy exceeds $50,000," 980 F.2d at 567, was not necessary to the decision. This is made clear in a later Ninth Circuit opinion, *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373 (9th Cir.1997). In that case, defendant responded to the motion for remand by submitting declarations to show that the amount in controversy exceeded $50,000, and plaintiff's counsel expressly conceded as much. The court expressly distinguished these facts from those in *Gaus* where defendant "offered no facts whatsoever" to support its claim that the matter in controversy exceeded $50,000:

> We understand *Gaus* to mean that where the plaintiff does not claim damages in excess of $50,000 and the defendant offers "no facts whatsoever" to show that the amount in controversy exceeds $50,000, then the defendant has not borne the burden on removal of proving that the amount in controversy requirement is satisfied.

116 F.3d at 376.

In *Singer,* the court adopted an approach for determining the amount in controversy that was first described in *Allen v. R&H Oil Co.,* 63 F.3d 1326 (5th Cir.1995), a case in which plaintiffs alleged the district court improperly "aggregated" their claim for punitive damages as a "whole" in reaching the $50,000 amount in controversy requirement:

> The Fifth Circuit has described an appropriate procedure for determining the amount in controversy on removal. The district court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal

**4**

petition, and may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." The Fifth circuit agrees with our conclusion in *Gaus* that removal "cannot be based simply upon conclusory allegations" where the ad damnum is silent.

116 F.3d at 377 (citations omitted).

The Seventh Circuit has adopted a similar approach to the consideration of post-removal evidence. In *Harmon v. OKI Sys.,* 115 F.3d 477 (7th Cir.1997), the district court relied upon post-removal answers to interrogatories to determine whether removal jurisdiction was proper. Plaintiffs argued that district courts are limited to evidence in the record when removal is sought. The court rejected this analysis, stating that "[t]he test should simply be whether the evidence sheds light on the situation which existed when the case was removed." *Harmon,* 115 F.3d at 479-480.

While it is undoubtedly best to include all relevant evidence in the petition for removal and motion to remand, there is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition. We align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction. We emphasize, as did the court in *Allen,* that "under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Allen,* 63 F.3d at 1335.

Plaintiff presented no evidence to contradict defendant's damages calculations, nor did plaintiff deny the damages exceeded the jurisdictional amount when given the opportunity. Under these circumstances, the district court correctly determined that defendant carried its burden of establishing removal jurisdiction was correct, and the court's decision to deny plaintiff's remand motion is affirmed.

II.    *The Merits*

Sierminski also appeals the grant of summary judgment in favor of defendant Transouth Financial Corporation. We review the district court's grant of summary judgment de novo, reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party, and applying the same standard as

the district court. *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir.1999) (citations omitted). A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allison,* 184 F.3d at 1306; Fed.R.Civ.P. 56(c).

Sierminski worked for defendant Transouth Financial Corporation, a business that processes funds and executes car loans and mortgages from June 1994 to October 1996. In February 1995, she became a customer services representative. Her workload was heavy in this new position, and her relationship with her immediate supervisor, Bob Rogers, deteriorated. A backlog of title work developed. Sierminski became aware that Rogers had let his notary expire and either notarized titles and other documents with an invalid seal or failed to notarize them at all. Sierminski first complained over the phone to the Director of Human Resources in January 1996. In March 1996, she submitted a written complaint regarding the illegality to the Area Manager. After Sierminski's written complaint, Rogers was demoted, and a new branch manager, Brian Belcher, took over as Sierminski's supervisor. Plaintiff's job remained unchanged. After the firing, Martinez handed plaintiff the responsibility of straightening out the backlog created by Rogers. Plaintiff was unable to make much headway and was criticized for not bringing under control the branch's backlog. She received numerous writeups and reprimands. The supervisors blamed her for the branch's problems, while plaintiff insisted the title problems were the result of the incompetent work done by Rogers. On October 31, 1996, plaintiff was fired. After the case was removed, the district court granted Transouth's motion for summary judgment.

Plaintiff contends the district court applied the wrong analysis in determining that there was no material fact issue regarding the causal link between plaintiff's actions and her subsequent termination. Sierminski alleged she was terminated in retaliation for objecting to her former supervisor's illegal notary practices, in violation of Florida's Whistleblower's Act, section 448.102, Florida Statutes. We apply the state's

substantive law in this diversity case. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Act states: "An employer may not take retaliatory action against an employee because the employee has ... (3) objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." § 448.102(3), Fla. Stat. There are no cases discussing what standards to apply to determine whether the necessary causal link between the alleged retaliatory action and the objection to illegality has been established.

On appeal, plaintiff concedes the lack of Florida case law regarding causation, but contends the district court erred in using as a guideline the burden shifting proof standards for retaliation cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the federal equivalent to Florida's Whistleblower's Act. Once plaintiff establishes a prima facie case by proving only that the protected activity and the negative employment action are not completely unrelated, the burden shifts to the defendant to proffer a legitimate reason for the adverse action. See, e.g., *Olmsted v. Taco Bell,* 141 F.3d 1457, 1460 (11th Cir.1998). The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate" reason is merely pretext for prohibited, retaliatory conduct. *Olmsted,* 141 F.3d at 1460 (11th Cir.1998).

Plaintiff asserts that retaliatory discharge is tortious in nature, *see Scott v. Otis Elevator Co.,* 524 So.2d 642 (Fla.1988), and appears to advocate use of either of two other tests. The " 'but for' causation-in-fact test provides that 'to constitute proximate cause there must be such a natural, direct, and continuous sequence between the negligent act ... and the [plaintiff's] injury that it can reasonably be said that *but for* the [negligent] act ... the injury would not have occurred'." *Stahl v. Metropolitan Dade County,* 438 So.2d 14, 17 (Fla. 3rd DCA 1983) (citation omitted). The "substantial factor test" employed in negligence cases provides that "[d]efendant's conduct in an action for personal injuries is considered a cause of the event if it was a material and substantial factor in bringing it about. Whether it is such a substantial factor is for the jury to determine, unless the issue is so clear that reasonable men could not differ." *Stahl,* 438 So.2d at 19 (citation omitted).

**7**

In the absence of any guiding case law, the district court correctly applied the analysis used in Title VII retaliation cases. Even assuming, arguendo, that the more stringent negligence standards apply, plaintiff has failed to establish a genuine issue of material fact regarding causation. The result would be no different under any test proposed by plaintiff.

As the district court noted, it is apparent that plaintiff's formal complaints about her former supervisor's notary violations helped lead to his demotion. Plaintiff's job, however, remained the same, and she was not terminated until seven months later. Contrary to plaintiff's assertion, it was not just this lack of temporal connection upon which the district court based its decision. The court correctly observed that the record is replete with reasons for her termination having nothing to do with her complaint.

Sierminski received disciplinary notices and warnings regarding her performance deficiencies, deficiencies admittedly within her areas of responsibility. Without dispute, the record shows that the performance deficiencies most often had nothing to do with correcting improper notarization of car titles attributed to her former supervisor, but were instead within her areas of responsibility. Plaintiff admitted that she was overwhelmed by her job throughout her tenure with the company and that she could not keep up with her work. Sierminski also argues that the court failed to consider her testimony that her new supervisor told her that "someone higher up wanted her fired." Contrary to Sierminski's characterization, this would constitute circumstantial, not "direct evidence" and is entitled little weight where this unknown person was never identified. Nor is there evidence in the record other than plaintiff's conclusory assertions that other employees who had made mistakes in their work were treated less harshly than plaintiff.

We agree with the district court's summarization of the causal chain and its conclusion:

> The causal chain seems to be this: Plaintiff complained of illegal notary activity, which helped trigger the demotion of Rogers, which in turn focused responsibility on her for cleaning up her branch's title problem, which she could not handle very well, which led to her termination. All told, the Court finds that this chain, linking Plaintiff's complaint of illegality with her termination, took too long to develop and is too indirect to satisfy the causality requirement inherent in Ch. 448.102(3).

AFFIRMED.

8