[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14657
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-24086-MGC

MR. JOSE TRIGO,
OLIVIA TRIGO,

Plaintiff -Appellants,

versus

CITY OF DORAL,
MERRETT STIERHEIM,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 21, 2016)

Before MARCUS, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Jose Trigo and his wife, Olivia Trigo, (individually, "J. Trigo" and "O.

Trigo" and collectively, "the Trigos") appeal from the district court's grant of

summary judgment in favor of the City of Doral ("Doral") on their employment discrimination and retaliation suit under Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3, and the Florida Whistle-blower's Act ("FWA"), Fla. Stat. § 112.3187.  Among other things, the Trigos alleged that Doral retaliated against J. Trigo, a Lieutenant who worked in the Doral Police Department, because he had filed a charge with the Equal Employment Opportunity Commission ("EEOC") and because his wife had made public records requests about certain police officers.  On appeal, the Trigos argue that: (1) the district court erred in granting summary judgment on their Title VII and FWA retaliation claims; (2) the district court erred by granting summary judgment on their First Amendment retaliation claims; and (3) if remand is appropriate on their federal claims, their state law claim, over which the district court declined to exercise supplemental jurisdiction without the federal claims, would be properly before the district court.  After careful review, we affirm.

We review a grant of summary judgment de novo.  Kernel Records Oy v. Mosley, 694 F.3d 1294, 1300 (11th Cir. 2012).  Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A factual dispute exists where a reasonable fact-finder could find by a preponderance of the evidence that the non-moving party is entitled to a verdict.  Kernel Records, 694 F.3d at 1300.  In determining whether evidence creates a factual dispute, a court should draw

reasonable inferences in favor of the nonmovant, but "inferences based upon speculation are not reasonable." Id. at 1301 (quotation omitted). A district court does not abuse its discretion by dismissing remaining state law claims when the federal claims have been disposed of prior to trial. Faucher v. Rodziewicz, 891 F.2d 864, 871-72 (11th Cir. 1990).

First, we are unpersuaded by the Trigos' claim that the district court erred in granting summary judgment on the Title VII and FWA retaliation claims because the district court incorrectly used the date J. Trigo was suspended rather than the date he was terminated for purposes of assessing the adverse employment action, and because Doral's shifting and inconsistent reasons for J. Trigo's termination show that the reasons were pretextual. Title VII makes it illegal for "an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The FWA is generally equivalent to Title VII, and we have approved of the application of the Title VII burden-shifting standard to claims brought under the FWA. See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000).

To establish a prima facie case of retaliation under Title VII, plaintiffs must prove that: (1) they engaged in statutorily protected conduct; (2) they suffered an

adverse employment action; and (3) the adverse action was causally related to the protected expression. Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1193-94 (11th Cir. 2016). To prove adverse employment action, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Id. at 1195. The employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. Id. The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). But mere temporal proximity, without more, must be "very close." Id. When an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation. Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006).

Once a plaintiff has made a prima facie case, it is the employer's burden to articulate a legitimate, non-retaliatory reason for the challenged employment action. Trask, 822 F.3d at 1194. The ultimate burden is on the plaintiff to prove by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. Id. To show pretext, a plaintiff cannot

4

recast the reason but must meet it head on and rebut it.    Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012).    The plaintiff must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale."  Id. at 1055-56 (quotation omitted).  But, we do not judge whether an employer's decisions are "prudent or fair," and the sole concern is whether unlawful discriminatory animus motivated an employment decision.  Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).  The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs or "reality as it exists outside of the decision maker's head."    Alvarez v. Royal Atlantic Developers, 610 F.3d 1253, 1266 (11th Cir. 2010).  If the reason is one that might motivate a reasonable employer, the plaintiff cannot succeed by simply quarrelling with the wisdom of the reason.  Id. at 1265-66.   Additional, but undisclosed, non-discriminatory reasons for the employment action which are not inconsistent do not necessarily demonstrate pretext.  Tidwell v. Carter Prod., 135 F.3d 1422, 1428 (11th Cir. 1998).   Similarly, differing reasons that are not necessarily inconsistent do not show pretext.  Zaben v. Air Prod. & Chemicals, Inc., 129 F.3d 1453, 1458-59 (11th Cir. 1997).

In this case, the district court did not err by granting summary judgment on the Trigos' Title VII and FWA retaliation claims.   Even assuming the Trigos established a prima facie case, they failed to demonstrate that Doral's legitimate

non-discriminatory reasons for J. Trigo's termination were pretextual. According to the City Manager, he terminated J. Trigo: (1) based on a December 17, 2011, memorandum from the Interim Police Chief, recommending that J. Trigo be terminated; (2) based on the City Manager's review of statements made by witnesses during a 2011 investigation into allegations of favoritism and corruption in Doral's Police Department; (3) because J. Trigo's tenure had been marked by unprofessional administrative practices; and (4) because J. Trigo's tenure had a great cost in terms of department morale and efficiency. In order to show pretext, the Trigos argue that the City Manager's reasons for the termination varied.

As the record reveals, when the City Manager initially met with J. Trigo and his attorney, he affirmed his decision to terminate J. Trigo based on the sources mentioned in the December 17, 2011, memorandum. In his later deposition, the City Manager later testified that the Interim Police Chief's recommendation had great influence in the decision, and also said that he was concerned about the morale within the department, the preferential treatment shown J. Trigo previously, and the attitudes of witnesses involved in the 2011 investigation. He added that he had discounted parts of the 2011 report that J. Trigo had previously been punished for. He also admitted that he was concerned about "the dichotomy that existed within the department in terms of the 'cli[que].'"

6

Notably, none of the City Manager's deposition testimony is directly inconsistent with the original December 17 memorandum. And, in any event, slightly differing reasons, or additional, undisclosed non-discriminatory reasons for the termination, are insufficient to show pretext. Tidwell, 135 F.3d at 1428; Zaben, 129 F.3d at 1458-59. Because the Trigos failed to establish that Doral's legitimate non-discriminatory reasons for the termination were pretextual, the district court did not err in granting summary judgment on the Title VII retaliation claim. Consequently, their FWA claim fails as well. Sierminski, 216 F.3d at 950.

We also find no merit to the Trigos' argument that the district court erred by granting summary judgment on their First Amendment retaliation claims because O. Trigo's public record requests were expressive conduct protected by the First Amendment and because J. Trigo was terminated in retaliation for his association with O. Trigo and her public record requests. To establish a First Amendment retaliation claim, a plaintiff must show that (1) her speech or act was constitutionally protected; (2) she suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). The Constitution guarantees the right to engage not only in "pure speech," but also "expressive conduct." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1270 (11th Cir. 2004). To

determine whether a particular act counts as expressive conduct, a court must determine (1) whether intent to convey a particularized message was present; and (2) in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it. Id. However, a narrow, succinctly articulable message is not a condition of constitutional protection. Id. In determining whether conduct is expressive, we ask whether the reasonable person would interpret it as some sort of message, not whether an observer would necessarily infer a specific message. Id.

The Constitution accords special protection to two different forms of association, "intimate association" and "expressive association." McCabe v. Sharrett, 12 F.3d 1558, 1562-63 (11th Cir. 1994). The right of expressive association -- the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion -- is protected by the First Amendment as a necessary corollary of the rights that the amendment protects by its terms. Id. at 1563. The state may not take a materially adverse action against its employee in retaliation for exercising First Amendment associational rights. Id. at 1568. A plaintiff can obtain special protection for an asserted associational right if he can demonstrate either that the asserted association closely enough resembles a family relationship to be protected by the right to intimate association, or that the

8

purpose of the association is to engage in activities independently protected by the First Amendment. Id. at 1563. There is no First Amendment right of access to public information. Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Fla., 141 F.3d 1032, 1035 (11th Cir.1998).

Here, the district court did not err in granting summary judgment on O. Trigo's First Amendment retaliation claim. As the record shows, O. Trigo lacked intent to convey a message with her public records requests; rather, she specified that her requests were to "obtain information to protect [her] family." She further admitted that she sought information to "effectively or more effectively defend against false accusations[;] . . . [e]xpose wrongful governmental conduct[;] . . . expose violations of law[;] . . . expose . . . violations of [the Florida's Law Enforcement Officer's Bill of Rights;] . . . [a]nd[] to redress grievances with [Doral]." None of the reasons expressed by O. Trigo demonstrate an "intent to convey a particularized message." Holloman, 370 F.3d at 1270. And contrary to her argument, O. Trigo's subjective intent in making the requests is relevant to determine whether an intent to convey a particularized message was present. Id.

Nor did the district court err by granting summary judgment on J. Trigo's First Amendment associational retaliation claims. While J. Trigo argues that his association with his wife constituted expressive association, we've already concluded that O. Trigo's public records requests were not conducted to convey a

specific message, but were instead conducted to obtain information. In any event, the act of seeking to obtain the records themselves is not inherently protected by the First Amendment. Foto USA, 141 F.3d at 1035. Thus, on this record, the Trigos failed to demonstrate that the purpose of J. Trigo's expressive association was to engage in activities independently protected by the First Amendment. See McCabe, 12 F.3d at 1563.

In short, the district court did not err in granting summary judgment on the Trigos' First Amendment retaliation claims. Moreover, since the Trigos were not entitled to relief on their federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over their remaining state law claim. See Raney, 370 F.3d at 1089.

**AFFIRMED**.