[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10385
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-00102-JES-CM


GEORGE ELVER,

Plaintiff-Appellant,

versus

HENDRY COUNTY SHERIFF'S
OFFICE, et al.,

Defendants,

STEVE WHIDDEN,
in his official and individual capacity
as Sheriff of Hendry County, Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 24, 2019)

Before MARCUS, WILSON and HULL, Circuit Judges.

PER CURIAM:

George Elver, a former Deputy Sheriff in Hendry County, Florida, appeals the district court's grant of summary judgment to his former employer, Sheriff Steve Whidden, on his claims of retaliatory termination, raised pursuant to the Florida Whistleblower Act ("FWA"), Fla. Stat. § 112.3187(4), (5), and the First Amendment, 42 U.S.C. § 1983.  On appeal, Elver argues that the district court erred in ruling that: (1) he did not meet his burden in showing that Whidden's proffered reasons for terminating him were pretextual; and (2) Whidden would have fired him regardless of his testimony in a fellow deputy's trial for misconduct.  After careful review, we affirm.

We review de novo a district court's grant of summary judgment.  Jefferson v. Sewon Am., Inc., 891 F.3d 911, 919 (11th Cir. 2018).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Holloman v. Mail-Well Corp., 443 F.3d 832, 836-37 (11th Cir. 2006).  "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."  Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (quotations omitted).

The FWA prohibits state and local agencies from retaliating against any person who discloses information alleging, in relevant part, a violation of any federal, state, or local law, rule, or regulation.  Fla. Stat. § 112.3187(4), (5).  We apply the Title VII retaliation analysis -- and burden-shifting framework -- to FWA claims of retaliatory discharge that are the subject of a summary judgment motion.  See Sierminski v. Transouth Financial Corp., 216 F.3d 945, 950–51 (11th Cir. 2000).  To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events.  Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998); Fla. Dept. of Children & Families v. Shapiro, 68 So. 3d 298, 305–306 (Fla. Dist. Ct. App. 2011).  Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate reason for the adverse action.  Sierminksi, 216 F.3d at 950.  The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate" reason is merely pretext for prohibited, retaliatory conduct.  Id.

When an employer asserts misconduct by the employee as the legitimate reason for its action, the pretext inquiry focuses on the employer's beliefs and whether the employer was dissatisfied with the employee for nondiscriminatory reasons, "even if mistakenly or unfairly so."  Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010).  If the proffered reason is one that might

motivate a reasonable employer, however, the plaintiff must "meet it head on and rebut it" instead of merely quarreling with it. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004). If the employer proffers more than one legitimate, non-retaliatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment. See Fla. Stat. § 112.3187(10); Chapman v. AI Transp., 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc).

Similarly, to support a § 1983 claim, a plaintiff must show that he was intentionally deprived of a federal right by a person acting under color of state law. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). Under the First Amendment, a public employer may not retaliate against an employee for the employee's exercise of constitutionally protected speech. Rankin v. McPherson, 483 U.S. 378, 383 (1987). In order to evaluate First Amendment retaliation claims, courts often apply a four-step analysis set forth in Pickering v. Board of Education, 391 U.S. 563 (1968) and Bryson v. City of Waycross, 888 F.2d 1562 (11th Cir. 1989). To prevail under this analysis, if the employee's speech meets certain conditions, the burden then shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech. Bryson, 888 F.2d at 1565–66.

Here, the district court did not err when it granted summary judgment to Whidden on Elver's FWA claim. Elver's claim stems from his allegation that he

4

testified at an April 2017 trial about the misconduct of another deputy sheriff, Sergeant Archer, and was later terminated in retaliation for his involvement in the Archer matter. The record, at the summary judgment stage, included undisputed evidence that Elver was subpoenaed for the Archer trial in March 2017; Elver's supervisor, Lieutenant Shawn Reed, and a lieutenant named Stevens, thereafter met with Elver to discuss transferring him to another location; Elver recorded this meeting; officers then transferred him; the same day of the Archer trial -- at which Elver and others testified -- officers began investigating a report from Stevens that Elver had played the recording of his transfer meeting to others in his new location, while disparaging his fellow officers; following the investigation into Elver's conduct in sharing the recording of the meeting, a Sheriff's Office panel recommended his termination; and the Sheriff's Office fired Elver in July 2017. Based on this record, Elver does not dispute that the Sheriff's Office gave legitimate, non-retaliatory reasons for his dismissal -- insubordination, disparagement of superiors, and lowering agency morale by playing the recording -- and it thus became Elver's obligation to show that the reasons for his termination were pretextual.

However, Elver has not shown that there were any material disputes of fact concerning pretext. For starters, he has not demonstrated that Sheriff Whidden's proffered reasons for Elver's termination were false. As the undisputed record reveals, Lieutenant Stevens requested an investigation into Elver after learning that

Elver had played the recording of their meeting in front of others, and Chief Deputy Kevin Nelson ordered Lieutenant Ben Rowe to conduct an internal investigation, called "Recording IA." Following the investigation, Lieutenant Rowe sustained the charges against Elver for insubordination, criticism of orders and policies, gossip, and knowledge of the rules and regulations of procedures. Pursuant to Chief Deputy Nelson's orders, a pre-disciplinary hearing was then held, and the three members of the panel unanimously sustained three of the four charges against Elver -- insubordination, criticism of orders, and knowledge of policies and procedures -- and recommended his dismissal. The panel agreed that Elver's manner of speaking to the lieutenants and his decision, as a supervisor, to play the recording to his subordinates amounted to serious misconduct detrimental to the morale of the agency and thus deserving of termination.

The record contains affidavits from the Sheriff's Office officials involved in the Recording IA and the resulting disciplinary action attesting that the decision to initiate the investigation into Elver, the investigation and its findings, the decision to recommend disciplinary action, and the decision to terminate Elver were all based solely on his conduct surrounding the recording. These individuals added that Elver's involvement in the Archer matter had no relevance on any of the actions undertaken as part of the investigation and the resulting discipline. Specifically, Lieutenant Rowe submitted an affidavit indicating that his conclusions in the

6

Recording IA were not influenced by anyone else at the Sheriff's Office, and the affidavits of the other officers on Elver's pre-disciplinary hearing panel confirmed that the panel's recommendation was influenced only by Rowe's findings and the recording. Sheriff Whidden said that he had never rejected a pre-disciplinary hearing panel's recommendation, and the egregiousness of Elver's conduct was what led him to dismiss Elver.

By contrast, Elver admitted that he could not support his claims that Chief Deputy Nelson had communicated to Elver's superiors about his disciplinary status, nor that Rowe was instructed to find a violation during the Recording IA. Elver admitted that he did not know why the pre-disciplinary hearing panel members were selected by Nelson, and that he never heard Nelson or Whidden try to influence the panel members. Thus, to the extent Elver's arguments merely "quarreled" with the evidence Whidden put forward rather than rebutted it, it was insufficient as a matter of law. Wilson, 376 F.3d at 1088; see also Cordoba, 419 F.3d at 1181.

Elver also failed to present any evidence to show that Sheriff Whidden was motivated by retaliatory animus, or that the true reasons for firing him were retaliatory ones. To the contrary, Elver testified that he never told anyone at the Sheriff's Office that he was involved in the Archer matter, and Whidden and Nelson denied knowing about his involvement during the course of the Recording IA and the pre-disciplinary hearing process. Additionally, Elver failed to put forward

7

evidence, other than his own speculation, related to several of his key claims, including whether Sheriff Whidden and Chief Deputy Nelson knew of his participation in the Archer matter, and whether his superiors conspired to have him quit the Sheriff's Office.  Therefore, because Elver did not show any genuine dispute of material fact concerning whether Sheriff Whidden's proffered reasons were pretextual, the district court properly granted summary judgment on this claim.  See Cordoba, 419 F.3d at 1181.[1]

Summary judgment was also proper on Elver's First Amendment claims, because there are no issues of material fact about whether Sheriff Whidden would have made the same decision to terminate Elver even in the absence of the protected speech.  Bryson, 888 F.2d at 1565–66.  As we've detailed, Elver has put forth no admissible evidence to doubt that the Sheriff, in good faith, believed Elver was insubordinate during the events surrounding the recording, and terminated him

---

[1] It's worth noting that Elver's argument on appeal concerning his FWA retaliation claim is that the district court erred in concluding that the Sheriff's Office "would have terminated Elver regardless of his reporting and testimony" because "Appellee's alleged non-retaliatory reasons for terminating Elver were not worthy of belief."  In arguing that the reasons behind his termination were pretextual, he mentions his transfer to Clewiston, but he's not offered anything more than speculation to suggest that evidence surrounding his transfer created a genuine dispute of fact about the subsequent Recording IA and hearing procedure that resulted in his termination. Moreover, Elver has not set forth his transfer as a separate FWA claim, nor does he argue that the district court erred in failing to treat it as a separate claim.  Cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' [However, the statute does not] bar an employee from using the prior acts as background evidence in support of a timely claim.").

accordingly.    Indeed, Sheriff Whidden testified that the egregiousness of the accusations against Elver led him to accept the panel's recommendation.  Because Elver has not demonstrated any genuine issue of material fact concerning whether Sheriff Whidden would have made the same decision to terminate Elver even in the absence of the protected speech, the district court did not err in granting summary judgment on Elver's First Amendment retaliation claim.

**AFFIRMED**.